**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CRYSTAL PERRY,

             Plaintiff,                          Case No. 1:23-cv-00202

v.                                        Hon. Robert J. Jonker
                                              Mag. Phillip J. Green

MICHIGAN STATE UNIVERSITY;
MICHIGAN STATE UNIVERSITY BOARD OF
TRUSTEES; MARLON LYNCH, and DARYL
GREEN, in their official and individual capacities,

             Defendants.

---

**<u>DEFENDANTS BRIEF IN SUPPORT OF MOTION TO DISMISS, MOTION FOR
SUMMARY JUDGMENT, AND MOTION TO PARTIALLY STRIKE PLAINTIFF'S
COMPLAINT</u>**

**ORAL ARGUMENT REQUESTED**

**CORRECTED**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................................. iii

INTRODUCTION ................................................................................................. 1

STATEMENT OF RELEVANT FACTS .....................................................................3

ARGUMENT .......................................................................................................8

      A.    Standard of Review ...............................................................................8

           1.   Motion to Dismiss, FRCP 12(b)(6) ...............................................8

           2.   Motion for Summary Judgment, FRCP 56 .........................................10

           3.   Motion to Strike, FRCP 12(f) ............................................10

      B.    Count I of Plaintiff's Complaint, retaliation under Title VII, should be dismissed in its entirety .............................................................11

           1.   Plaintiff's Title VII claim is barred in part for failure to exhaust administrative remedies and should be dismissed pursuant to FRCP 12(b)(6) ...........................................11

           2.   Part of Plaintiff's Title VII retaliation claim should be dismissed pursuant to FRCP 12(b)(6) because Plaintiff has not plausibly pled a prima facie case of retaliation; part of Plaintiff's VII retaliation claim should be dismissed under FRCP 56 because Plaintiff cannot establish a prima facie case of retaliation or there is a legitimate, non-retaliatory reason for the allegedly adverse actions ...................................12

      C.    Count II of Plaintiff's Complaint, retaliation under the ELCRA, should be dismissed in its entirety. .......................................................16

           1.   Plaintiff did not comply with the Court of Claims Act Notice Requirement; thus, her state law claims should be dismissed in whole or in part pursuant to FRCP 12(b).............................................16

           2.   Part of Plaintiff's ELCRA retaliation claim should be dismissed pursuant to FRCP 12(b)(6) because Plaintiff has not plausibly pled a prima facie case of retaliation; part of Plaintiff's Title VII claim should be dismissed pursuant to FRCP 56 because Plaintiff cannot establish a prima facie case of retaliation or there are legitimate, non-retaliatory reason for the allegedly adverse actions.....................18

i

*Table of Contents, cont.*

D.     The Court should strike the immaterial paragraphs in Plaintiff's
        Complaint.................................................................................................23

CONCLUSION.....................................................................................................25

# INDEX OF AUTHORITIES

<u>Cases</u>

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502 (6th Cir. 2013)........9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................................................9

*Bachman v. Swan Harbour Assoc.*, 653 N.W.2d 415 (2002) ...........................................18

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................8

*Burgess v. Fischer*, 735 F.3d 462 (6th Cir. 2013)............................................................10

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ...............................12, 18

*Center for Bio-Ethical Reform v. Napolitano*, 648 F.3d 365 (6th Cir. 2011)...................10

*Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460 (6th Cir. 1998)................12

*Elia Companies, LLC v University of Michigan Regents*, opinion of the Michigan
    Supreme Court, issued May 2, 2023 (Case No. 162830)...................................1, 17

*Gavitt v. Born*, 835 F.3d 623 (6th Cir. 2016).......................................................................9

*Granderson v. Univ. of Michigan*, 211 F. App'x 398 (6th Cir. 2006)...............................11

*Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531 (6th Cir. 2012)...............................9

*Hunter v. Sec'y of U.S. Army*, 565 F.3d 986 (6th Cir. 2009).............................................12

*Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195 (6th Cir. 2010) ......................................10

*Kubik v. Cent. Michigan Univ. Bd. of Trustees*, 221 F. Supp. 3d 885
    (E.D. Mich. 2016), aff'd, 717 F. App'x 577 (6th Cir. 2017)...............................13

*Lambert v. Hartman*, 517 F.3d 433 (6th Cir. 2008)............................................................8

*Llewellyn-Jones v. Metro Prop. Grp., LLC,* 22 F. Supp. 3d 760 (E.D. Mich. 2014)........23

*Mitchell v. Chapman*, 343 F.3d 811 (6th Cir. 2003)........................................................ 11

*Index of Authorities, cont.*

*New Albany Tractor v. Louisville Tractor*, 650 F.3d 1046 (6th Cir. 2011)........................10

*Taylor v Geithner*, 703 F3d 328 (6th Cir. 2013)................................................................18

*U.S. S.E.C. v. Sierra Brokerage Servs. Inc.*, 712 F.3d 321 (6th Cir. 2013)......................10

*White v Dept of Transp*, 964 NW2d 88 (2020)............................................................12, 18

*Wrench LLC v. Taco Bell Corp.,* 36 F. Supp. 2d 787 (W.D. Mich. 1998) ............ 10-11, 23

Rules and Statutes

FRCP 12(b)(6) ...............................................................................2, 8, 10-12, 16, 18, 23-24

FRCP 56..........................................................................................2, 10, 12, 18, 24

M.C.L. 600.6431 ....................................................................................... 16-18

iv

## I.    INTRODUCTION

In mid-January 2022, Plaintiff filed her first EEOC complaint.  (Compl, ¶ 221; Exhibit A).[1]

On June 22, 2022, Plaintiff filed her second EEOC complaint, alleging retaliation from 4/25/2022-6/8/2022.  (Compl., ¶ 323, 361; Exhibit C).  The Michigan State University Office of the General Counsel received a Notice of Intent in the mail from Plaintiff on December 16, 2022. (Exhibit D.)[2] The Court of Claims never transmitted a copy of the notice to MSU because Plaintiff did not furnish the requisite copies and/or provide the requisite addresses. (See *Id.*)  On February 25, 2023, Plaintiff filed a two-count complaint against Michigan State University and Michigan State University Board of Trustees ("MSU") as well as Daryl Green and Marlon Lynch.  The Complaint alleges that MSU retaliated against Plaintiff in numerous ways because of the OIE and/or EEOC complaints she filed in violation of Title VII (Count I) and that all of the defendants retaliated against Plaintiff in numerous ways because of the OIE and/or EEOC complaints she filed in

---

[1] Plaintiff did not sue within 90 days of receiving her notice of right to sue (notice dated November 18, 2022, so February 16, 2023, was the last day to file, and this Complaint was filed on February 25, 2023).  (Exhibit B, First Notice of Right to Sue.)  Thus, the allegations in her first EEOC complaint are not before this Court.  (Exhibit A, Plaintiff's First EEOC Complaint.) Plaintiff does not allege that this EEOC complaint is part of her lawsuit.  (Compl., ¶¶ 361-362.)

[2] MSU never received the Notice from the Court of Claims.  The Court of Claims never transmitted a copy of the notice to MSU because Plaintiff did not furnish the requisite copies and/or provide the requisite addresses. (See *Id.*)  Thus, Plaintiff failed to comply with the requirements of MCL 600.6431(3).  MCL 600.6431(3) states, in pertinent part, that "[a] claimant shall furnish copies of a claim or notice filed under subsection (1) to the clerk at the time of filing for transmittal to . . . each of the . . . arms . . .  of this state designated in the claim or notice."  Plaintiff did not provide the requisite information to the Court of Claims, and thus failed to comply with the requirements of MCL 600.6431, which is a condition precedent to filing a suit against the state.  Thus, Plaintiff's ELCRA claims are barred.  See *Elia Companies, LLC v University of Michigan Regents*, opinion of the Michigan Supreme Court, issued May 2, 2023 (Case No. 162830), p 4 ("Accordingly, under our well-established jurisprudence, a party bringing suit against the state must fully comply with the terms of MCL 600.6431, regardless of a finding of prejudice. Under this caselaw, plaintiff's failure to comply with MCL 600.6431 mandates the dismissal of its claims.")

violation of Michigan's Elliott-Larsen Civil Rights Act (ELCRA) (Count II).  Part of Plaintiff's claims are subject to dismissal pursuant to FRCP 12(b)(6), while others should be dismissed pursuant to FRCP 56.

Plaintiff's federal claims (Count I) are barred for a variety of reasons.  First, some of Plaintiff's allegations were not included in her second EEOC complaint; thus, Plaintiff has failed to exhaust her administrative remedies and parts of her claims are not properly in front of this Court.  Second, Plaintiff has not pled (or cannot establish) a prima facie case of retaliation for each allegedly adverse employment action.  And even if Plaintiff has pled (or can establish) a prima facie case, there is a legitimate, non-retaliatory reason for the actions.

Plaintiff's state law claims are also barred for several reasons.  First, Plaintiff's failure to comply with the strict notice requirements in the Court of Claims Act bars her state law claims (or, alternatively, those that accrued as of June 15, 2022, and/or those that were not alleged in her notice of claim).  Second, Plaintiff has not pled (or cannot establish) a prima facie case of retaliation for each allegedly adverse employment action.  And even if Plaintiff has pled (or can establish) a prima facie case, there is a legitimate, non-retaliatory reason for the actions.

And if the Complaint is not wholly dismissed, Defendants request that the Court strike the immaterial allegations, narrowing the case to the appropriate time, people, and claims.  As indicated above, Plaintiff's 381-paragraph complaint makes numerous irrelevant allegations, which do not support her claims.  Specifically, paragraphs 4, 23, 29-51, most of 52, 53-79, 81-115, part of 116, 117-124, 126-128, 132-148, 150-163, 165-167, 169-195, 197-200, 202-204, 206-220, 225-267, 286-289, 296, 298, 300, 316-322, 332, and 334-339, are irrelevant to the claims at issue. These "immaterial" allegations should be stricken pursuant to FRCP 12(f).

## II.  STATEMENT OF RELEVANT FACTS

The MSU Office of the General Counsel received a Notice of Intent in the mail from Plaintiff on December 16, 2022. (Exhibit D.)  But the Court of Claims never transmitted a copy of the notice to MSU because Plaintiff did not furnish the requisite copies and/or provide the requisite addresses. (See *Id.*)  On February 25, 2023, Plaintiff filed a two-count complaint against MSU and MSU BOT ("MSU") as well as Green and Lynch.  (Compl.).   The Complaint alleges that MSU retaliated against Plaintiff in a number of ways because of her OIE and EEOC complaints in violation of Title VII (Count I) and that all the defendants retaliated against Plaintiff in a number of ways because of her OIE and EEOC complaints in violation of the ELCRA (Count II).  (Compl., ¶¶ 363-379).

Relevant to the claims at issue, Plaintiff alleges:

- Lynch was the Vice President for Public Safety and Chief of Police at all relevant times and Green's supervisor. (Compl., ¶ 9, 125).
- Green was the MSUPD Chief of Staff at all relevant times and Plaintiff's supervisor (Plaintiff later claims Monette was her supervisor).  (Compl., ¶ 11, 52, 125).
- Plaintiff started her employment with MSU PD as the Human Resources Administrator II/S on July 12, 2021.  (Compl., ¶ 25).
- In October 2021, Dave Oslund filed an Internal Affairs (IA) complaint against Perry; Plaintiff believed Oslund filed the complaint in retaliation "for doing her job as a Black person working in MSUPD." (Compl., ¶¶ 129-131).[3]
- On approximately November 8, 2021, Plaintiff had an incident with MSU PD officer Jessica Martin; Plaintiff complained to Green, who told her to file an IA complaint; Plaintiff filed an OIE complaint against Martin. (Compl., ¶¶ 149, 164, 168).
- In approximately mid-December 2021, Plaintiff filed an OIE complaint against MSU PD employee Kennedy Parker. (Compl., ¶ 196).
- In December 2021, after filing OIE complaints, "two MSU PD employees, James Terrill and Luke Silver, told [Plaintiff] they were going to file a 'reverse discrimination' complaint against her because they were upset that she was hired"; Plaintiff "assumed that it was retaliatory as . . . they though she was hired because she was 'friends' with the chief, who happened to be of the

---

[3] This factual allegation was not part of Plaintiff's 2nd EEOC complaint, so it cannot be used for her Title VII claim.  (Ex C, p 1.)  In fact, Plaintiff's EEOC complaint only includes a time period of 4/25/2022-6/8/2022.  (*Id.*)  And the alleged conduct occurred prior to June 15, 2022, so it is barred by the Court of Claims Act and cannot be used for her ELCRA claims, either.

same race and color." (Compl., ¶¶ 201, 205). [4]

- In mid-January 2022, Plaintiff filed her first EEOC complaint "alleging race discrimination against MSU based on the incidents described previously in this Complaint."[5]  (Compl, ¶ 221.)

- Also in mid-January 2022, Parker submitted an OIE complaint against Plaintiff; "[upon] information and belief, Parker had no reason for filing the complaint against [Plaintiff] other than to retaliate against her for filing a complaint against Parker." (Compl., ¶¶ 221-224).[6]

- In early March 2022, MSU closed the complaint Plaintiff ". . . filed against Parker in December 2021 without completing an investigation or making any findings." (Compl., ¶ 268).[7]

- In March 2022, Green "performed an interim performance review of [Plaintiff]," and checked that Plaintiff's "performance met expectations." (Compl., ¶ 270, 273, Exhibit 7).  The review stated, in pertinent part, that: Plaintiff's "performance has overall met work expectations, however, she did have one formal complaint regarding the improper dissemination of medical information" and that she "was coached (no formal discipline)"; Plaintiff's "demeanor towards colleagues must remain professional at all times and should invite collaboration"; and Plaintiff ". . . should regularly network with Central HR regarding HR matters where she or her staff have questions or concerns regarding University policy." (Compl., ¶ 271, Ex7).  Green checked "The performance and/or conduct of the employee met expectations during the interim evaluation period. The evaluation period will continue." (Compl., ¶¶ 271, 272, 273, Exhibit 7).[8]

---

[4] This factual allegation was not part of Plaintiff's 2nd EEOC complaint, so it cannot be used for her Title VII claim.  (Ex C, p 1.)  And it was not included in Plaintiff's Notice of Intent, so it is barred by the Court of Claims Act, and cannot be used for her ELCRA claims, either.  (Ex D.)

[5] Plaintiff did not sue within 90 days of receiving her notice of right to sue (notice dated November 18, 2022, so February 16, 2023, was the last day to file, and this Complaint was filed on February 25, 2023).  (Ex B.)  Plaintiff does not allege that this EEOC complaint is part of her lawsuit.  (Compl., ¶¶ 361-362.)  Thus, the allegations in her first EEOC complaint are not before this Court.  (Ex A.)

[6] This factual allegation was not part of Plaintiff's 2nd EEOC complaint, so it cannot be used for her Title VII claim.  (Ex C, p 1.)  And this factual allegation was not included in Plaintiff's Notice of Intent, so it is barred by the Court of Claims Act and cannot be used for her ELCRA claims, either.  (Ex D.)

[7] This factual allegation was not part of Plaintiff's EEOC complaints, so it cannot be used for her Title VII claim.  (Ex C, p 1.)  And this factual allegation was not included in Plaintiff's Notice of Intent, so it is barred by the Court of Claims Act and cannot be used for her ELCRA claims, either.  (Ex D.)

[8] As Green explains in his affidavit, "Plaintiff was exhibiting behavioral issues with colleagues and stepping outside her lane professionally."  (Ex E, p 1.)  She had already made two professional errors, and was instructed to "regularly network with Central HR."  (*Id*. at 1, 2.)  Plaintiff was "on the cusp of failing to meet expectations," but Green "erred on the side of meets expectations," giving Plaintiff "an opportunity to improve."  (*Id*. at 2.)  Importantly, Green

*(cont'd)*

4

- In early April 2022, MSU found no violation against Martin in the OIE investigation. (Compl., ¶ 274).[9]   ". . . [S]oon after [MSU's] investigation report was issued, Green began actively retaliating against [Plaintiff]." (Compl., ¶ 275).
- Green "accused [Plaintiff] of 'engineering' complaints against Parker," "said that he heard 'bad things' around the office about [Plaintiff]"; "called [Plaintiff] 'argumentative'"; and ". . . began micromanaging all of [Plaintiff's] job duties, including reading, reviewing, and approving all emails before they were sent out." (Compl., ¶¶ 276, 277, 278, 279).  "Green had never provided any of this information or feedback to Perry before, including during her March 2022 performance review just weeks earlier." (Compl., ¶ 280).[10]
- "Green significantly reduced [Plaintiff's] job duties" by, "[u]pon information and belief," demoting her to "Human Resources Administrator I, a non-supervisory position," and removing "the staff who had reported to [Plaintiff] and reassigned them under the pretext that they were completing 'special projects' for Green." (Compl., ¶¶ 281-284).[11]
- On April 26, 2022, Parker and Green accused Plaintiff of mistakenly "including a prospective hire" in an email. (Compl., ¶¶ 290-295).[12]
- At the beginning of May 2022, Plaintiff "filed an OIE complaint against Green due to the

already knew that Plaintiff filed an OIE complaint against Martin, and that Plaintiff had, in his opinion (because he was present for the confrontation at issue), "provided false information." (*Id*.)  Green did not make negative comments on Plaintiff's interim review because of her protected conduct, but rather because it was his job as her supervisor "to truthfully evaluate" her performance and give her an "opportunity to recognize her mistakes and improve." (*Id*.)

[9] This factual allegation was not part of Plaintiff's second EEOC complaint, so it cannot be used for her Title VII claim. (Ex C, p 1.)  And it was not included in Plaintiff's Notice of Intent, so it is barred by the Court of Claims Act and cannot be used for her ELCRA claims, either. (Ex D.)

[10] These factual allegations were not part of Plaintiff's second EEOC complaint, so they cannot be used for her Title VII claim. (Ex C, p 1.)  And these factual allegations, with the exception of Green allegedly micromanaging Plaintiff, were not included in Plaintiff's Notice of Intent, so they are barred by the Court of Claims Act and cannot be used for her ELCRA claims, either. (Ex D.)  Moreover, Green pointed out several issues in Plaintiff's interim review and indicated that the review would continue. (Compl., ¶ 271.)

[11] The factual allegation that Plaintiff's title may have been changed was not in her Notice of Claim. (Ex D.)  So, it is barred by the Court of Claims Act, and cannot be used for her ELCRA claim.  And as Green and Jarvis attest, Plaintiff was never demoted; Plaintiff held the title of Human Resources Administrator II/Supervisor until she was terminated, and her pay was never decreased. (Exhibit E, p 2; Exhibit F, p1.)  Plaintiff only supervised Katherine Parmalee and Green had her report to him because of the poor working relationship between Plaintiff and Parmalee and concern for Parmalee's well-being, not because of Plaintiff's protected conduct. (*Id*.)

[12] This factual allegation was not part of Plaintiff's second EEOC complaint, so it cannot be used for her Title VII claim. (Ex C, p 1.)  Similarly, this factual allegation was not in her Notice of Claim. (Ex D.)  So, it is barred by the Court of Claims Act, and cannot be used for her ELCRA claim.

negative and harassing actions he had been taking against her, which appeared to be retaliatory and had recently gone from simply passive inaction to active adverse employment actions . . . ." (Compl., ¶ 297).

- At the end of May 2022, Plaintiff filed an OIE retaliation complaint against Parker. (Compl., ¶ 299).
- In May 2022, "Green directed [Plaintiff] to move out of the office and back into the records cubicle." (Compl., ¶¶ 80, 301).[13]
- In late May 2022, Plaintiff asked "Tom Fritz, Director of the Office of Support and Equity within OCR, seeking support in addressing the continued harassment and the hostile work environment she faced at MSU PD." After this, ". . . Green began trying to avoid her by not answering her calls, avoiding her when they were in a room together, and sometimes failing to respond to her emails." (Compl., ¶¶ 302, 303).[14]
- "Green continued challenging [Plaintiff's] role in the hiring process by requesting she interview candidates who did not pass the screening process." (Compl., ¶ 304-316).[15]
- On June 22, 2022, Plaintiff ". . . filed a second EEOC complaint regarding the retaliation she was experiencing by Green, which she believed was due to her filing complaints of race discrimination with OIE and due to her seeking support from Fritz." (Compl., ¶ 323, 361; Exhibit C).[16]

---

[13] The factual allegation that Plaintiff was moved back into the records cubicle was not part of Plaintiff's second EEOC complaint, so it cannot be used for her Title VII claim. (Ex C, p 1.) And as Green attests, Plaintiff and Parmalee, who both telecommuted primarily, were moved to a hoteling space for telecommuters to make room for new hires who were going to be working on site regularly. (Ex E, p 3.) Plaintiff was not moved because of her protected conduct. (*Id*.)

[14] This factual allegation was not part of Plaintiff's second EEOC complaint, so it cannot be used for her Title VII claim. (Ex C, p 1.) Similarly, this factual allegation was not in her Notice of Claim. (Ex D.) So, it is barred by the Court of Claims Act, and cannot be used for her ELCRA claim.

[15] This factual allegation was not part of Plaintiff's second EEOC complaint, so it cannot be used for her Title VII claim. (Ex C, p 1.) Similarly, this factual allegation was not in her Notice of Claim. (Ex D.) So, it is barred by the Court of Claims Act, and cannot be used for her ELCRA claim.

[16] Again, Plaintiff's second EEOC complaint alleged retaliation from 4/25/2022-6/8/2022. (Exhibit C). In pertinent part, the complaint alleged:

> On or about January 10, 2022, I filed an EEOC Charge of Discrimination 471-2021-03815. After filing my charge, I experienced continued harassment from my Supervisor and other Upper Management. On or about April 25, 2022, I was harassed further during a meeting. On or about May 26, 2022, my staff was taken away, my duties were reduced, and my title was changed. On about June 8, 2022, I was moved from my office. I was later called into my Supervisors office and terminated. I believe I was discriminated against, subjected to retaliation, and discharged for participating in protected activity. . . . [*Id*. at p 1.]

6

- On July 8, 2022, which was within the "one-year probationary period pursuant to her collective bargaining agreement," Green conducted another performance review.  The review indicated that Plaintiff did not meet expectations because: ". . . there have been numerous performance issues and multiple employee complaints concerning various interactions"; Plaintiff had been "counseled regarding her behavior and [] refused to change" and "refused to accept responsibility for her conduct"; managing Plaintiff was "nearly impossible"; and MSU PD could not "support a position that [Plaintiff] successfully completed probation."  Green told Plaintiff "he was terminating her employment."   "Upon information and belief, Green terminated [Plaintiff] in retaliation for filing complaints of race and sex discrimination and retaliation with OIE and the EEOC." (Compl., ¶¶ 325-331, Ex 8).[17]

- In mid-July 2022, Parker lodged additional complaints against Plaintiff with OIE after Plaintiff was terminated. (Compl., ¶ 333.)[18]

- "After she was terminated, [Plaintiff] began seeking other employment." "[Plaintiff] applied for several positions at MSU, including an open Human Resources Administrator position in the MSU College of Nursing." "On July 11, 2022, the College of Nursing offered [Plaintiff] an interview. . . ."  Plaintiff accepted. The interview was confirmed on July 12, 2022.  The interview was cancelled the next day because MSU HR notified the College of Nursing that Plaintiff's "application could not be considered for review at that time."  (Compl., ¶¶ 340-344).[19]

---

[17] As Green attests, Plaintiff was terminated because her performance did not improve, but rather worsened. (Exhibit E, p 4.)  She ". . . was involved in numerous professional incidents/ performance issues and was involved in numerous complaints concerning various interactions with a number of department employees at all levels."  (*Id*.)  Green "counseled" her, but "she refused to change" or "accept responsibility for her conduct."  (*Id*.)  Managing Plaintiff was "nearly impossible."  (*Id*.)  MSU PD "could not support a position that Plaintiff had successfully completed probation;" thus, Plaintiff was terminated.  (*Id*.)  The decision to terminate was "approved by employee relations" before it was enacted and was not because of Plaintiff's protected conduct.  (*Id*. at 4, 5).  Andrew Jarvis, the Human Resources Manager - Employee Relations at the time in question, corroborates Green's attestations, and further indicates that Employee Relations did not approve of the termination because of Plaintiff's protected conduct. (Exhibit F, p 2).

[18] This factual allegation was not part of Plaintiff's second EEOC complaint, so it cannot be used for her Title VII claim. (Ex C, p 1.)  Similarly, this factual allegation was not in her Notice of Claim. (Ex D.)  So, it is barred by the Court of Claims Act, and cannot be used for her ELCRA claim.

[19] This factual allegation was not part of Plaintiff's second EEOC complaint, so it cannot be used for her Title VII claim. (Ex C, p 1.)  As Jarvis attests, Employee Relations determines, on a case-by-case basis, whether a former employee who did not successfully complete probation is eligible for future positions and informs Human Resources.  (Ex F, p 3).  Employee Relations determined that Plaintiff should be restricted from future employment because of "Plaintiff's refusal to perform her job duties at times, displayed ineptitude at times, hostile/negative/ argumentative demeanor/attitude, obstinance, and lack of coachability," not because of her

*(cont'd)*

- Around the beginning of August 2022, Plaintiff "filed a charge of discrimination with the Michigan Department of Civil Rights ("MDCR") alleging race and sex discrimination and retaliation against MSU." (Compl., ¶ 345).
- During an interview of Lynch in August 2022 that MSU conducted for the OIE complaint Plaintiff filed against Green, "Lynch falsely asserted that Green had put into place a 'performance evaluation process or improvement plan' for [Plaintiff]. (Compl., ¶¶ 346-347).[20]
- Around the end of October 2022 and November 2022, MSU found no violation against Parker or Green in the OIE complaint filed by Plaintiff against Parker and Green, respectively. (Compl., ¶¶ 357-358, 359-360). [21]
- On November 28, 2022, Plaintiff received her notice of right to sue on her second EEOC complaint. (Compl., ¶ 361, Exhibit 10).
- Plaintiff's damages include: "injuries"; "[p]ain, suffering, and emotional distress"; and "[p]hysical manifestations of emotional distress . . . ." (Compl., ¶ 381.)

## III. ARGUMENT

### A.    Standard of Review

#### 1.    Motion to Dismiss, FRCP 12(b)(6)

A Rule 12 motion tests "the plaintiff's cause of action as stated in the complaint." *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008) (citation and internal quotation marks omitted). Plaintiff must assert sufficient factual allegations to establish that her claims are "plausible on [their] face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  An assessment of "the

---

protected conduct.  (*Id.*)  Jarvis informed HR personnel, including Kristie Sova, of the decision to restrict and asked them to change Plaintiff's status for the positions she had already applied for.  (*Id.*)  Sova corroborates Jarvis' testimony and further attests that Perry applied for the position with the College of Nursing on June 20, 2022, and Sova changed Plaintiff's status for the position (and eight other positions) to "[d]oes not meet basic qualifications – restricted list." (Exhibit G, pp 1, 2).  Sova was not aware of, and did not act because of, Plaintiff's protected conduct.  (*Id.* at 2).

[20] This is the only factual allegation against Lynch relevant to the claims at issue.  This factual allegation was not part of Plaintiff's second EEOC complaint, so it cannot be used for her Title VII claim.  (Ex C, p 1.)  Similarly, this factual allegation was not in her Notice of Claim.  (Ex D.) So, it is barred by the Court of Claims Act, and cannot be used for her ELCRA claim, either.

[21] These factual allegations were not part of Plaintiff's second EEOC complaint, so they cannot be used for her Title VII claim.  (Ex C, p 1.)  Similarly, these factual allegations were not in her Notice of Claim.  (Ex D.)  So, they are barred by the Court of Claims Act, and cannot be used for her ELCRA claim, either.

facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings," but the Court may consider "exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).  A complaint must comply with FRCP 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted).

Courts disregard "mere recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.  And "the court need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citation and internal quotation marks omitted).  Importantly, allegations based upon "information and belief" are insufficient to survive a Rule 12 motion, as they "are precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told [courts] to ignore when evaluating a complaint's sufficiency." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013).  And where any "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FRCP 8(a)(2)).

Importantly, Plaintiff cannot rely on discovery to survive a Rule 12 motion.  Plaintiff must

know the "factual details in order to draft a 'plausible complaint'"; and "may not use the discovery

process to obtain these facts after filing suit."  *New Albany Tractor v. Louisville Tractor*, 650 F.3d

1046, 1051 (6th Cir. 2011).  The complaint must state the "when, where, in what or by whom" to

state a claim.  *Center for Bio-Ethical Reform v. Napolitano*, 648 F.3d 365, 373 (6th Cir. 2011).

### 2.      Motion for Summary Judgment, FRCP 56

Summary judgment under FRCP 56 is proper "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." FED. R. CIV. P. 56(a).  The evidence and reasonable inferences must be considered in a

light favorable to the nonmoving party.  *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013)

(citation omitted).  The moving party must initially show the absence of a genuine issue of

material fact.  *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010).  The

nonmoving party must then "present some 'specific facts showing that there is a genuine issue

for trial.'"  *Id.* (citation omitted).  "There is no genuine issue for trial where the record 'taken as a

whole could not lead a rational trier of fact to find for the non-moving party.'"  *Burgess,* 735 F.3d

at 471 (citation omitted).  "The ultimate inquiry is 'whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law.'"  *U.S. S.E.C. v. Sierra Brokerage Servs. Inc.*, 712 F.3d 321, 327 (6th

Cir. 2013) (citation omitted).

### 3.      Motion to Strike, FRCP 12(f)

The  Court  has  "liberal  discretion"  to  strike  "immaterial  .  .  .  matter"  from  a

complaint.  FRCP 12(f); *Wrench LLC v. Taco Bell Corp.,* 36 F. Supp. 2d 787, 789 (W.D. Mich.

1998).  A motion to strike is proper when the complaint contains immaterial allegations that are

irrelevant to the litigation. *Wrench LLC,* 36 F. Supp. 2d at 789.

**B.     Count I of Plaintiff's Complaint, retaliation under Title VII, should be dismissed in its entirety.**

    **1.     Plaintiff's Title VII claim is barred in part for failure to exhaust administrative remedies and should be dismissed pursuant to FRCP 12(b)(6).**

Under Title VII, a retaliation claim can proceed in court only after the exhaustion of administrative remedies.  42 U.S.C. § 2000e-5(e); *Mitchell v. Chapman*, 343 F.3d 811, 820 (6th Cir. 2003).  "[A] plaintiff must satisfy two prerequisites before filing a Title VII action in federal court: (1) timely file a charge of employment discrimination with the EEOC; and (2) receive and act upon the EEOC's statutory notice of the right to sue."  *Granderson v. Univ. of Michigan*, 211 F. App'x 398, 400 (6th Cir. 2006).

Plaintiff alleges that on June 22, 2022, she filed her second EEOC complaint, alleging retaliation from 4/25/2022-6/8/2022.  (Compl., ¶ 323, 361; Exhibit C).  In pertinent part, the complaint alleged: (1) Plaintiff "experienced continued harassment from [her] Supervisor and other Upper Management"; (2) "[o]n or about April 25, 2022, [Plaintiff] was harassed further during a meeting"; (3) "[o]n or about May 26, 2022, [her] staff was taken away, [her] duties were reduced, and [her] title was changed"; (4) "[o]n about June 8, 2022, [she] was moved from [her] office"; and (5) she "was later called into [her] Supervisors office and terminated."  (*Id.* at p 1.)

Plaintiff's second EEOC complaint does not contain the relevant allegations in paragraphs 129-131, 201, 205, 221-224, 268, 274, 276-279, 290-295, 301 (regarding the records cubicle), 302-303, 304-316, 333, 340-344, 346-347, and 357-360.  These allegations include: Oslund filing an IA complaint; Terrill and Silver threatening to file a reverse discrimination complaint; Green accusing Plaintiff of engineering complaints, saying he heard bad things about Plaintiff, calling Plaintiff argumentative, and micromanaging her job duties; Green's non-attendance at a meeting and sending an email; Green's avoidance of Plaintiff; Green's

11

interference in the hiring process; failing to hire Plaintiff for the position in the College of

Nursing; and various allegations regarding OIE investigations.  And these claims would not have

reasonably been expected to "grow out of the charge."  *Davis v. Sodexho, Cumberland Coll.*

*Cafeteria*, 157 F.3d 460, 464 (6th Cir. 1998). Accordingly, Plaintiff has failed to exhaust her

administrative remedies.  Thus, Portions of this claim must be dismissed.

> **2.    Part of Plaintiff's Title VII retaliation claim should be dismissed pursuant to
> FRCP 12(b)(6) because Plaintiff has not plausibly pled a prima facie case of
> retaliation; part of Plaintiff's VII retaliation claim should be dismissed under
> FRCP 56 because Plaintiff cannot establish a prima facie case of retaliation
> or there is a legitimate, non-retaliatory reason for the allegedly adverse
> actions.**

Retaliation claims under Title VII employ the *McDonnell Douglas* burden shifting

framework.  Plaintiff must first establish a prima facie case by producing evidence showing: (1)

she engaged in protected activity; (2) which was known to MSU; (3) MSU took an adverse

employment action against her; and (4) there was a causal connection between the protected

activity and the adverse employment action.  *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 996

(6th Cir. 2009).  If Plaintiff establishes these elements, the burden shifts to MSU to articulate a

legitimate non-discriminatory reason for the adverse employment action.  *Id.*  The burden shifts

back once more to plaintiff to establish that the proffered reason was merely pretext.  *Id.*

Importantly, the Title VII "antiretaliation provision protects an individual not from all

retaliation, but from retaliation that produces an injury or harm." *Id.* (citing *Burlington N. &*

*Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006).  The alleged injury or harm must be

significant enough that it would dissuade a reasonable worker from making or supporting a

charge of discrimination.  "[I]t is important to separate significant from trivial harms. An

employee's decision to report discriminatory behavior cannot immunize that employee from

those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* (cleaned up).

To establish causation, "the plaintiff must produce sufficient evidence from which one could draw an inference that the employer would not have taken the adverse action against the plaintiff had the plaintiff not engaged in activity that Title VII protects." *Kubik v. Cent. Michigan Univ. Bd. of Trustees*, 221 F. Supp. 3d 885, 910 (E.D. Mich. 2016), aff'd, 717 F. App'x 577 (6th Cir. 2017).  In other words, Plaintiff must establish "but-for" causation.

Here, Plaintiff's claim fails because she did not plausibly plead a prima facie case and/or she cannot establish a prima facie case and each purportedly retaliatory action had a legitimate non-discriminatory purpose.

Plaintiff alleges that Green: "accused [Plaintiff] of 'engineering' complaints against Parker'" "said that he heard 'bad things' around the office about [Plaintiff]"; "called [Plaintiff] 'argumentative'"; and ". . . began micromanaging all of [Plaintiff's] job duties, including reading, reviewing, and approving all emails before they were sent out." (Compl., ¶¶ 276, 277, 278, 279). These are not adverse actions. There are no allegations that they resulted in any injury or harm. They are merely petty slights or minor annoyances typical in the workplace.  Further, there are no factual allegations that they were caused by Plaintiff's protected conduct.

Plaintiff alleges that "Green significantly reduced [Plaintiff's] job duties" by, "[u]pon information and belief," demoting her to "Human Resources Administrator I, a non-supervisory position," and removing "the staff who had reported to [Plaintiff] and reassigned them under the pretext that they were completing 'special projects' for Green." (Compl., ¶¶ 281-284).  First, "upon information and belief," is not sufficient to plead an adverse action.  And there are no factual allegations that these allegedly adverse actions were caused by Plaintiff's protected conduct.  And

even if Plaintiff has sufficiently pled a prima facie case, as Green and Jarvis attest, Plaintiff was never demoted; Plaintiff held the title of Human Resources Administrator II/Supervisor until she was terminated, and her pay was never decreased. (Exhibit E, p 2; Exhibit F, p1.) Plaintiff only supervised Katherine Parmalee and Green had her report to him because of the poor working relationship between Plaintiff and Parmalee and concern for Parmalee's well-being, not because of Plaintiff's protected conduct. (*Id*.) Thus, even if this constitutes an adverse action, it was not done for a discriminatory reason.

Plaintiff alleges that on April 26, 2022, Parker and Green accused Plaintiff of mistakenly "including a prospective hire" in an email. (Compl., ¶¶ 290-295). This is not an adverse action. There is no allegation that it resulted in any injury or harm. It is merely a petty slight or minor annoyance typical in the workplace. Further, there are no factual allegations that it was caused by Plaintiff's protected conduct.

Plaintiff alleges in May 2022, "Green directed [Plaintiff] to move out of the office and back into the records cubicle." (Compl., ¶¶ 80, 301). This is not an adverse action. There is no allegation that this action caused plaintiff injury or harm. This is, at most, a petty slight. And there are no factual allegations that it was caused by Plaintiff's protected conduct. And even if Plaintiff has adequately pled a prima facie case, as Green attests, Plaintiff and Parmalee, who both telecommuted primarily, were moved to a hoteling space for telecommuters to make room for new hires who were going to be working on site regularly. (Ex E, p 3.) Plaintiff was not moved because of her protected conduct. (*Id*.)

Plaintiff alleges that ". . . Green began trying to avoid her by not answering her calls, avoiding her when they were in a room together, and sometimes failing to respond to her emails." (Compl., ¶¶ 302, 303). These are not adverse employment actions. There are no allegations that

14

they resulted in any injury or harm.  They are merely petty slights or minor annoyances typical in the workplace.  Further, there is no factual allegation that they were caused by Plaintiff's protected conduct.  In fact, Plaintiff does not even provide a time for the alleged adverse action(s).  And there is no factual allegation that Green knew Plaintiff contacted Fritz.

Plaintiff alleges that "Green continued challenging [Plaintiff's] role in the hiring process by requesting she interview candidates who did not pass the screening process." (Compl., ¶ 304-316).  This is not an adverse employment action.  There is no allegation that it resulted in any injury or harm.  It is merely a petty slight or minor annoyance typical in the workplace, especially since Green was Plaintiff's supervisor.  And the allegations in paragraphs 315-316 are not detailed enough to give Defendants fair notice of the claim in order to defend.  Further, there are no factual allegations that Green's request was because of Plaintiff's protected conduct.

On July 8, 2022, at the end of her probationary period, Plaintiff alleges that "[u]pon information and belief, Green terminated [Plaintiff] in retaliation for filing complaints of race and sex discrimination and retaliation with OIE and the EEOC." (Compl., ¶¶ 325-331, Ex 8).  "Upon information and belief" is not sufficient to plead an adverse action or causation.  And even if it were, as Green attests, Plaintiff was terminated because she was already experiencing performance issues at the initial review, and her performance did not improve, but rather worsened.  (Exhibit E, pp 1, 4.)  She ". . . was involved in numerous professional incidents/performance issues and was involved in numerous complaints concerning various interactions with a number of department employees at all levels."  (*Id*. at 4.)  Green "counseled" her, but "she refused to change" or "accept responsibility for her conduct."  (*Id*.)  Managing Plaintiff was "nearly impossible."  (*Id*.)  MSU PD "could not support a position that Plaintiff had successfully completed probation;" thus, Plaintiff was terminated.  (*Id*.)  The decision to terminate was "approved by employee relations"

before it was enacted and was not because of Plaintiff's protected conduct. (*Id*. at 4, 5). Andrew Jarvis, the Human Resources Manager - Employee Relations at the time in question, corroborates Green's attestations and further indicates that Employee Relations did not approve of the termination because of Plaintiff's protected conduct. (Exhibit F, p 2).

Thus, Plaintiff's Title VII claim should be dismissed in its entirety.

**C.    Count II of Plaintiff's Complaint, retaliation under the ELCRA, should be dismissed in its entirety. [22]**

**1.    Plaintiff did not comply with the Court of Claims Act Notice Requirement; thus, her state law claims should be dismissed in whole or in part pursuant to FRCP 12(b)6).**

Plaintiff's failure to comply with the notice requirements in the Court of Claims Act bars her state law claims (or, alternatively, those that accrued as of June 15, 2022, and/or those that were not alleged in her notice of claim).

The Court of Claims Act provides, in pertinent part, that "a claim may not be maintained against this state unless the claimant, within ["6 months after the event that gives rise to the claim" for "personal injuries,"] files in the office of the clerk of the court of claims either a written claim or a written notice of intention to file a claim against this state or any of its . . . arms." M.C.L. 600.6431(1),(4). The notice must include, in pertinent part, "[a] statement of the time when and the place where the claim arose" and "[a] detailed statement of the nature of the claim and of the items of damage alleged or claimed to have been sustained." M.C.L. 600.6431(2)(a),(b). And the claimant is further required to "furnish copies of a claim or notice . . . to the clerk at the time of filing for transmittal . . . to each of the . . . arms . . . of this state designated in the claim or notice." MCL 600.6431(3)

---

[22] MSU preserves its right to raise an Eleventh Amendment immunity defense.

The MSU Office of the General Counsel received a Notice of Intent in the mail from Plaintiff on December 16, 2022.  (Exhibit D.)  But MSU never received the Notice from the Court of Claims.  The Court of Claims never transmitted a copy of the notice to MSU because Plaintiff did not furnish the requisite copies and/or provide the requisite addresses.  (See *Id*.)  Thus, Plaintiff failed to comply with the requirements of MCL 600.6431(3).  Therefore, Plaintiff's ELCRA claims are barred.  See *Elia Companies, LLC v University of Michigan Regents*, opinion of the Michigan Supreme Court, issued May 2, 2023 (Case No. 162830), p 4 ("Accordingly, under our well-established jurisprudence, a party bringing suit against the state must fully comply with the terms of MCL 600.6431, regardless of a finding of prejudice. Under this caselaw, plaintiff's failure to comply with MCL 600.6431 mandates the dismissal of its claims.")

Alternatively, Plaintiff's failure to comply with M.C.L. 600.6431(2)(a) and (b) bars her state law claims in part.  *Id.*  Specifically, those portions of her claims that were not alleged in her notice of claim (¶¶ 129-131 Oslund filing an IA complaint; ¶¶ 201, 205 Terrill and Silver threatening to file reverse discrimination complaint; ¶¶ 221-224 Parker filing OIE complaint; ¶ 268 closing OIE complaint; ¶ 274 finding no violation in an OIE complaint; ¶¶ 276, 277, 278 Green accusing Plaintiff of "'engineering' complaints against Parker," saying he "heard 'bad things' around the office about" Plaintiff, and calling Plaintiff "'argumentative'"; ¶¶ 281-284 title may have been changed; ¶¶ 290-295 accusing Plaintiff of mistakenly including a prospective hire in an email; ¶¶ 302, 303 Green avoiding Plaintiff; ¶¶ 304-316 Green requesting she interview specific candidates; ¶ 333 Parker filed complaints against Plaintiff after she was terminated;  ¶¶ 346-347 Lynch falsely testified in an OIE interview; and ¶¶ 357-358, 359-360 OIE finding no violation in two of Plaintiff's complaints) or that were alleged but lacked the requisite specificity (including the time and place) are barred (see, e.g., the last paragraph on page 3 of Plaintiff's

17

Notice, Exhibit D, regarding Green's micromanaging of Plaintiff).  Also, alternatively, Plaintiff's

failure to comply with M.C.L. 600.6431(1) and (4) bars her state law claims that accrued as of

June 15, 2022, which is essentially everything before paragraph 318.  See *Elia Companies*, op at

4.

      Thus, Plaintiff's ELCRA claims should be dismissed in their entirety (or, alternatively, in

large part).

    **2.**    **Part of Plaintiff's ELCRA retaliation claim should be dismissed pursuant to
FRCP 12(b)(6) because Plaintiff has not plausibly pled a prima facie case of
retaliation; part of Plaintiff's Title VII claim should be dismissed pursuant to
FRCP 56 because Plaintiff cannot establish a prima facie case of retaliation
or there are legitimate, non-retaliatory reason for the allegedly adverse
actions.**

      To establish a prima facie ELCRA retaliation case, Plaintiff must show: (1) she engaged in

a protected activity, (2) Defendants knew about the protected activity, (3) Defendants took an

adverse employment action against her, and (4) there is a causal connection between the protected

activity and the adverse employment action.  *Bachman v. Swan Harbour Assoc.*, 653 N.W.2d 415

(2002).  In this context, an adverse employment action is one that "well might have dissuaded a

*reasonable* worker from making or supporting a charge of discrimination." *Burlington N & Santa

Fe Ry Co v White*, 548 US 53, 67-68 (2006) (emphasis added); see also *White v Dept of Transp*,

964 NW2d 88 (2020).  But not "all retaliation" is actionable, only that which "produces injury or

harm." *Taylor v Geithner*, 703 F3d 328, 336 (6th Cir. 2013).  This is in contrast with "petty slights,

minor annoyances, and simple lack of good manners," which are not actionable even if retaliatory;

and that the actions must deter *reasonable* employees, which is an objective test to be analyzed on

a case-by-case basis.  *White*, at 118-119 (emphasis added) (citation and quotations omitted).

      Plaintiff alleges in October 2021, Oslund filed an Internal Affairs (IA) complaint against

Perry; Plaintiff believed Oslund filed the complaint in retaliation "for doing her job as a Black

person working in MSUPD." (Compl., ¶¶ 129-131).  This is not an adverse employment action.
There are no factual allegations that it caused injury or harm.  Rather this is a petty slight or minor
annoyance.  And it is not alleged that it was caused by Plaintiff's protected conduct, but rather "for
doing her job as a Black person."

Plaintiff alleges in December 2021, after filing OIE complaints, "two MSU PD employees,
James Terrill and Luke Silver, told [Plaintiff] they were going to file a 'reverse discrimination'
complaint against her because they were upset that she was hired"; Plaintiff "assumed that it was
retaliatory as . . . they though she was hired because she was 'friends' with the chief, who happened
to be of the same race and color." (Compl., ¶¶ 201, 205).  This is not an adverse employment
action.  There is no allegation that it caused injury or harm.  This is a petty slight or minor
annoyance.  And there is no allegation that it was caused by Plaintiff's protected conduct
(plaintiff's assumption is not sufficient to plead causation), but rather because she was hired and
is black.

Plaintiff alleges in mid-January 2022, Parker submitted an OIE complaint against Plaintiff;
"[u]pon information and belief, Parker had no reason for filing the complaint against [Plaintiff]
other than to retaliate against her for filing a complaint against Parker." (Compl., ¶¶ 221-224).
This is not an adverse employment action.  There is no allegation that it caused injury or harm.
This is a petty slight or minor annoyance.  And there are no factual allegations, merely conclusions
("upon information and belief), that it was caused by Plaintiff's protected conduct.

Plaintiff alleges in early March 2022, MSU closed the complaint Plaintiff ". . . filed against
Parker in December 2021 without completing an investigation or making any findings." (Compl.,
¶ 268).  This is not an adverse employment action.  There is no allegation that it caused injury or
harm.  And there are no factual allegations that it was caused by Plaintiff's protected conduct.

Plaintiff alleges in early April 2022, MSU found no violation against Martin in the OIE investigation. (Compl., ¶ 274).  This is not an adverse employment action.  There is no allegation that it caused injury or harm.  And there are no factual allegations that it was caused by Plaintiff's protected conduct.

Plaintiff alleges that Green "accused [Plaintiff] of 'engineering' complaints against Parker," "said that he heard 'bad things' around the office about [Plaintiff]"; "called [Plaintiff] 'argumentative'"; and ". . . began micromanaging all of [Plaintiff's] job duties, including reading, reviewing, and approving all emails before they were sent out."  (Compl., ¶¶ 276, 277, 278, 279). This allegation was addressed in B.2. of the brief. Defendants incorporate by reference and rely on the arguments made therein.

Plaintiff alleges that "Green significantly reduced [Plaintiff's] job duties" by, "[u]pon information and belief," demoting her to "Human Resources Administrator I, a non-supervisory position," and removing "the staff who had reported to [Plaintiff] and reassigned them under the pretext that they were completing 'special projects' for Green."  (Compl., ¶¶ 281-284).  This allegation was addressed in B.2. of the brief. Defendants incorporate by reference and rely on the arguments made therein.

Plaintiff alleges on April 26, 2022, Parker and Green accused Plaintiff of mistakenly "including a prospective hire" in an email.  (Compl., ¶¶ 290-295). This allegation was addressed in B.2. of the brief.  Defendants incorporate by reference and rely on the arguments made therein.

Plaintiff alleges in May 2022, "Green directed [Plaintiff] to move out of the office and back into the records cubicle."  (Compl., ¶¶ 80, 301).  This allegation was addressed in B.2. of the brief. Defendants incorporate by reference and rely on the arguments made therein.

Plaintiff alleges that ". . . Green began trying to avoid her by not answering her calls,

avoiding her when they were in a room together, and sometimes failing to respond to her emails." (Compl., ¶¶ 302, 303).  This allegation was addressed in B.2. of the brief.  Defendants incorporate by reference and rely on the arguments made therein.

Plaintiff alleges that "Green continued challenging [Plaintiff's] role in the hiring process by requesting she interview candidates who did not pass the screening process."  (Compl., ¶¶ 304-316).  This allegation was addressed in B.2. of the brief.  Defendants incorporate by reference and rely on the arguments made therein.

On July 8, 2022, at the end of her probationary period, Plaintiff alleges that "[u]pon information and belief, Green terminated [Plaintiff] in retaliation for filing complaints of race and sex discrimination and retaliation with OIE and the EEOC."  (Compl., ¶¶ 325-331, Ex 8).  This allegation was addressed in B.2. of the brief.  Defendants incorporate by reference and rely on the arguments made therein.

Plaintiff alleges in mid-July 2022, Parker lodged additional complaints against Plaintiff with OIE after Plaintiff was terminated.  (Compl., ¶ 333.)  This is not an adverse employment action.  There are no factual allegations that it caused plaintiff injury or harm.  And there are no factual allegations that it was caused by Plaintiff's protected conduct.

Plaintiff alleges that "[a]fter she was terminated, [she] began seeking other employment." She "applied for several positions at MSU, including an open Human Resources Administrator position in the MSU College of Nursing." She was offered an interview on July 11, 2022, which she accepted. The interview was confirmed on July 12, 2022, but was cancelled the next day because MSU HR notified the College of Nursing that Plaintiff's "application could not be considered for review at that time."  (Compl., ¶¶ 340-344).  There are no factual allegations that this action was caused by Plaintiff's protected conduct.  There are also no factual allegations that

Lynch or Green knew Plaintiff had applied to this position or that they participated in any way in her interview being cancelled.  And even if Plaintiff has pled/established a prima facie case, there was a legitimate, non-discriminatory reason for the failure to hire Plaintiff.  As Jarvis attests, Employee Relations determines, on a case-by-case basis, whether a former employee who did not successfully complete probation is eligible for future positions and informs Human Resources. (Ex F, p 3).  Employee Relations determined that Plaintiff should be restricted from future employment because of "Plaintiff's refusal to perform her job duties at times, displayed ineptitude at times, hostile/negative/argumentative demeanor/attitude, obstinance, and lack of coachability," not because of her protected conduct.  (*Id*.)  Jarvis informed HR personnel, including Kristie Sova, of the decision to restrict and asked them to change Plaintiff's status for the positions she had already applied for.  (*Id*.)  Sova corroborates Jarvis' testimony and further attests that Perry applied for the position with the College of Nursing on June 20, 2022, and Sova changed Plaintiff's status for the position (and eight other positions) to "[d]oes not meet basic qualifications – restricted list." (Ex G, pp 1, 2).  Sova was not aware of, and did not act because of, Plaintiff's protected conduct. (*Id*. at 2).

Plaintiff alleges that during an interview of Lynch in August 2022 that MSU conducted for the OIE complaint Plaintiff filed against Green, "Lynch falsely asserted that Green had put into place a 'performance evaluation process or improvement plan' for [Plaintiff].  (Compl., ¶¶ 346-347).  This is not an adverse employment action.  There is no factual allegation that this injured or harmed Plaintiff.  This is at most a minor annoyance.  And there is no factual allegation that it was caused by Plaintiff's protected conduct.  Importantly, this is the only factual allegation against Lynch relevant to the claims at issue, so he must be dismissed from this lawsuit on this basis alone.

Finally, Plaintiff alleges around the end of October 2022 and November 2022, MSU found no violation against Parker or Green in the OIE complaint filed by Plaintiff against Parker and Green, respectively.  (Compl., ¶¶ 357-358, 359-360).  These are not adverse employment actions. There are no factual allegations that Plaintiff was injured or harmed by these actions.  And there are no factual allegations that they were caused by Plaintiff's protected conduct.

Thus, Plaintiff's ELCRA claims should be dismissed entirely.

**D.      The Court should strike the immaterial paragraphs in Plaintiff's Complaint.**

A motion to strike is properly granted when a complaint contains immaterial allegations that are irrelevant to the claims in the lawsuit.  FRCP 12(f); *Wrench LLC v. Taco Bell Corp.,* 36 F. Supp. 2d 787, 789 (W.D. Mich. 1998); *Llewellyn-Jones v. Metro Prop. Grp., LLC,* 22 F. Supp. 3d 760, 776 (E.D. Mich. 2014) (striking allegations "included to inflame the factfinder, without contributing to the conventional claims the plaintiffs try to raise.").

Plaintiff's 381-paragraph complaint makes numerous irrelevant allegations, which do not support her claims.  Specifically, paragraphs 4, 23, 29-51, most of 52, 53-79, 81-115, part of 116, 117-124, 126-128, 132-148, 150-163, 165-167, 169-195, 197-200, 202-204, 206-220, 225-267, 286-289, 296, 298, 300, 316-322, 332, and 334-339, are irrelevant to the claims at issue.  For example, many of these paragraphs seem to be loosely tethered to allegations of discrimination when the case at bar deals only with retaliation claims.  Defendant cannot fathom a purpose for such allegations, other than to "inflame the factfinder."  *Llewellyn-Jones*, 22 F. Supp. 3d at 776. These "immaterial" allegations should be stricken pursuant to FRCP 12(f).

Thus, if the Complaint is not dismissed in its entirety, Defendants ask this Court to strike paragraphs 4, 23, 29-51, most of 52, 53-79, 81-115, part of 116, 117-124, 126-128, 132-148, 150-163, 165-167, 169-195, 197-200, 202-204, 206-220, 225-267, 286-289, 296, 298, 300, 316-322, 332, and 334-339 of the Complaint as immaterial.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant their motion and dismiss the case in its entirety pursuant to FRCP 12(b)(6) and FRCP 56.  However, if the Court is not inclined to dismiss the case in its entirety at this stage, Defendants respectfully request that the Court strike paragraphs 4, 23, 29-51, most of 52, 53-79, 81-115, part of 116, 117-124, 126-128, 132-148, 150-163, 165-167, 169-195, 197-200, 202-204, 206-220, 225-267, 286-289, 296, 298, 300, 316-322, 332, and 334-339 of the Complaint pursuant to FRCP 12(f).


Respectfully submitted,


/s/*Elizabeth Watza*
*Attorney for Defendants*

May 15, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

 /s/*Elizabeth Watza*
*Attorney for Defendants*

**CERTIFICATE OF COMPLIANCE**

As required under LCivR 7.2(b)(ii), I hereby certify that this brief includes 8812 words including headings, footnotes, citations and quotations and not including the case caption, cover sheets, any table of contents, any table of authorities, the signature block, attachments, exhibits, and affidavits. This word count was generated by Microsoft Word 2010, the processing software utilized to draft the brief.

/s/Elizabeth Watza
*Attorney for Defendants*